# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
### APPELLATE DIVISION

CARL SIMON,            )

                      ) D.C. Civ. App. No. 2003-24

       *Appellant,*       )

                      )    Super. Ct. Misc. No. F28/2000

v.                        )

                      )

GOVERNMENT OF THE VIRGIN ISLANDS, )

                      )

       *Appellee.*        )

                      )

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: The Honorable Rhys S. Hodge

Considered: June 19, 2009
Filed: August 6, 2009

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the Virgin Islands; and **DARRYL DEAN DONOHUE**, Judge of the Superior Court, Division of St. Croix, sitting by designation.

ATTORNEYS:

Carolyn P. Hermon-Percell, Esq.
St. Thomas, U.S.V.I.
       *For the Appellant.*

Gabriela M. Haley, Esq.
St. Thomas, U.S.V.I.
       *For the Appellee.*

## MEMORANDUM OPINION

**PER CURIAM,**

This is an appeal from a July 18, 2002, judgment of the Superior Court of the Virgin Islands[1] denying Carl Simon's petition for a writ of habeas corpus. Simon's counsel, Attorney Carolyn P. Hermon-Percell, Esq., moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). For the reasons that follow, we will affirm the judgment of the Superior Court and grant the motion to withdraw.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

As the parties' familiarity with this matter is presumed, we recite only those facts that are pertinent to our analysis.

In September 1993, Simon, James Roach and another individual burglarized a house on St. John, U.S. Virgin Islands. Elroy Connor and Daniel Ezekiel, one of whom was an occupant of the house, arrived during the burglary. During an ensuing altercation, Ezekiel was shot dead. The three assailants fled the scene with money and other valuables. Simon and Roach were later separately apprehended.

---

[1] At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and judge of the Superior Court.

In May 1994, the Government of the Virgin Islands (the "Government") filed an Information charging Simon with aiding and abetting a premeditated murder and third-degree burglary.[2] An amendment to the Information in January 1995 changed the premeditated murder charge to felony murder and added one count of aiding and abetting first-degree robbery and one count of conspiracy to commit robbery. A subsequent amendment dropped the conspiracy count. A jury found Simon guilty of felony murder, first-degree robbery and third-degree burglary. The trial judge sentenced Simon to life in prison without the possibility of parole.

Simon appealed his conviction to this Court, arguing that the Superior Court erred in allowing the Government to amend the Information. Perceiving no prejudice to Simon from the amendment, we affirmed. Simon appealed our ruling to the Court of Appeals for the Third Circuit. Concluding that Simon's notice of appeal was untimely, the Third Circuit dismissed the appeal for want of jurisdiction.

After filing his notice of appeal in this Court but before we issued our ruling affirming his conviction, Simon filed a

---

[2]  The United States charged Roach with first-degree murder. In May 1994, Roach was convicted in this Court, sitting in its trial capacity, and was sentenced to life in prison. His sentence was later reduced to twenty years in prison.

petition for a writ of habeas corpus in the Superior Court. On
July 18, 2002, in a thirty-four page opinion, the Superior Court
dismissed Simon's petition. *Simon v. Gov't of the V.I.*, 47 V.I. 3
(V.I. Terr. Ct. 2002). This timely appeal of that ruling
followed.

In January 2004, this Court appointed Attorney C. Beth Moss,
Esq. to represent Simon in this appeal. Moss thereafter moved to
withdraw pursuant to *Anders*. Simon subsequently filed a pleading
in which he asked for substitute counsel and identified
additional issues that could support his appeal. Without
addressing Moss's motion to withdraw, the magistrate judge
granted Simon's motion for substitute counsel, relieved Moss and
appointed Hermon-Percell. Hermon-Percell now also seeks to
withdraw pursuant to *Anders*.[3] Simon has not responded to Hermon-
Percell's motion.

Although this appeal was filed in 2003, the Government did
not enter an appearance until 2005. After the Government entered
its appearance, it filed a joint motion with Simon for a modified

---

[3] After Hermon-Percell filed her brief, we remanded this
matter to the Superior Court. We noted the requirement of Local
Rule of Appellate Procedure 14(b) that the Superior Court issue a
certificate of probable cause before an appeal of an order
denying a writ of habeas corpus may proceed in this Court. We
observed that the record did not reflect whether the Superior
Court had issued such a certificate. The Superior Court has
since issued a certificate of probable cause.

briefing schedule.[4]  In August 2005, the magistrate judge
approved the parties' joint motion, ordering Simon to file his
brief by September 29, 2005 and the Government to file its brief
within thirty days of service of Simon's brief.  Hermon-Percell's
*Anders* brief was timely filed.[5]  The Government has not filed any
pleadings in this appeal since the joint motion.

## II.  DISCUSSION

### A.  Jurisdiction

This Court has jurisdiction to review criminal judgments and
orders of the Superior Court in cases in which the defendant has
been convicted, and has not entered a guilty plea.  *See* V.I. CODE
ANN. tit. 4, § 33 (2006); 48 U.S.C. § 1613(a) (2006).

### B.  Standard of Review

Our inquiry in evaluating the merits of Hermon-Percell's
motion to withdraw is twofold.  We ask (1) whether she has
adequately fulfilled the *Anders* requirements; and (2) "whether an

---

[4]  Hermon-Percell stated in the joint motion that she could
not comply with the Court's initial briefing schedule because she
had to accompany her son to college.  The Government attorney
assigned to this matter stated that she was taking a several-
week-long vacation for her wedding and honeymoon.

[5]  One month after Hermon-Percell filed her *Anders* brief,
the magistrate judge denied her motion to withdraw without
prejudice.  28 U.S.C. § 636 delineates the powers of a magistrate
judge.  Ruling on an *Anders* motion is not among those powers.
The magistrate judge's ruling on the motion is therefore without
any effect.

independent review of the record presents any nonfrivolous

issues." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir.

2001). A plenary standard of review is used to determine whether

there are any nonfrivolous issues on appeal. *Penson v. Ohio*, 488

U.S. 75, 80 (1988). When making such a determination, we are

informed by the standard of review governing each potential issue

raised. *See, e.g., United States v. Schuh*, 289 F.3d 968, 974-76

(7th Cir. 2002).

### III. <u>ANALYSIS</u>

### A. *Anders* Requirements

As a threshold matter, we note that the procedural

requirements the Supreme Court outlined in *Anders* ordinarily

apply only to direct appeals, not habeas appeals. *See Jackson v.*

*United States*, 190 Fed. Appx. 207, 208 (3d Cir. 2006)

(unpublished) ("*Anders* only applies to direct appeals, and does

not apply to collateral proceedings such as this habeas appeal."

(citation omitted)); *see also Turner v. Dragovich*, 163 Fed. Appx.

97, 99 (3d Cir. 2006) (unpublished) (noting that "a motion to

withdraw comporting with the requirements of *Anders* is not

necessary" but nevertheless ruling on the motion under the *Anders*

framework); *Di Angelo v. Illinois Dep't of Public Aid*, 891 F.2d

1260, 1263 (7th Cir. 1989) (denying as "unnecessary" a motion to

withdraw pursuant to *Anders* in a collateral civil proceeding).

In *Jackson*, while the Third Circuit acknowledged the inapplicability of *Anders* in the habeas context, it nevertheless addressed defense counsel's *Anders* brief in a habeas appeal. We will follow the course plotted in *Jackson*.

First, we must determine whether Hermon-Percell has adequately fulfilled her *Anders* obligations. "The duties of counsel when preparing an *Anders* brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous." *Youla*, 241 F.3d at 300 (citing *United States v. Marvin*, 211 F.3d 778, 780 (3d Cir. 2000)). "Counsel need not raise and reject every possible claim. However, at a minimum, he or she must meet the 'conscientious examination' standard set forth in *Anders*." *Id.* (citing *Marvin*, 211 F.3d at 780).

Hermon-Percell identifies seven primary issues that could sustain an appeal: (1) whether the trial court applied the correct standard in determining whether the amendment to Simon's Information was harmless error; (2) whether the trial court properly instructed the jury on the elements of aiding and abetting; (3) whether judicial estoppel applied to Roach's testimony; (4) whether the Government's closing remarks prejudiced Simon; (5) whether Simon was prejudiced by the Government's use of Roach's testimony; (6) whether Simon was

prejudiced by the Government's failure to turn over evidence of

an agreement between the Government and Roach; and (7) whether

the Government failed to prove the elements of first-degree

robbery. In a brief that spans more than twenty pages, these

issues are conscientiously examined and supported by citations to

both the record of the underlying proceedings and appropriate

legal authority. We therefore believe that the *Anders* brief is

adequate on its face and that Hermon-Percell has satisfied her

*Anders* duties.[6] *See Youla,* 241 F.3d at 301 (finding an *Anders*

brief adequate where there was "'sufficient indicia that

[counsel] thoroughly searched the record and the law in service

of his client so that we might confidently consider only those

objections raised'" (quoting *Marvin,* 211 F.3d at 781)).

---

[6] Under *Anders*, "a copy of counsel's brief should be
furnished to the indigent and time allowed [to the defendant] to
raise any points that he chooses." 386 U.S. at 744. Here,
Hermon-Percell's brief includes a certificate of service dated
September 29, 2005. In that certificate of service,
Hermon-Percell warrants that she "caused a true and correct copy
of the foregoing Brief of Appellant to be . . . mailed, U.S.
mail, postage prepaid, to Carl Simon, Golden Grove Correctional
Facility, RR #1, Kingshill, St. Croix, VI 00851." (Appellant's
Br. 24.)

Because of conflicting reports in the record about Simon's
whereabouts, the Court ordered Hermon-Percell to provide
competent evidence to support her conclusion that Simon is
incarcerated at the address indicated in her certificate of
service and to certify that she sent Simon a copy of the appendix
accompanying her *Anders* brief. Hermon-Percell timely complied
with that Order to our satisfaction.

"Where the *Anders* brief initially appears adequate on its face," we next inquire "whether an independent review of the record presents any nonfrivolous issues." *Youla*, 241 F.3d at 300-01. "[A]n appeal on a matter of law is frivolous where '[none] of the legal points [are] arguable on their merits.'" *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (alterations in original) (quoting *Anders*, 386 U.S. at 744). In this second step of our inquiry, we confine our attention to those "those portions of the record identified by an adequate *Anders* brief" and, if applicable, to "those issues raised in Appellant's pro se brief." *Id.* at 301 (citing *United States v. Wagner*, 103 F.3d 551, 552-53 (7th Cir. 1996)).[7] If we find that the issues raised in the briefs are frivolous, the appeal is "wholly frivolous." *Id.* at 299; *see also McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 438 n.10 (1988) (explaining that an appeal is frivolous if "the appeal lacks any basis in law or fact").

---

[7] In *Wagner*, the Court of Appeals for the Seventh Circuit determined that it would be inappropriate for a reviewing court "to comb the record . . . searching for possible non-frivolous issues that both the lawyer and his client may have overlooked[.]" 103 F.3d at 552. Instead, the court concluded that it would "confine [its] scrutiny of the record to the portions of it that relate to the issues discussed in the brief," and that "the court's duty is merely to determine whether counsel is correct in believing those grounds frivolous." *Id.* at 552-53. The Third Circuit has adopted the Seventh Circuit's approach. *See Youla*, 241 F.3d at 301; *Marvin*, 211 F.3d at 780 n.3 (noting that "this approach appears sound").

Here, because Simon has not submitted a brief in response to
Hermon-Percell's brief, our review is guided by the *Anders* brief
alone.[8]

## B.   Merits

### 1.   Amendment of the Information

Simon claims that the Superior Court erroneously applied the
harmless error standard to his challenge to the amendments to the
Information.   Some context is required to understand Simon's
argument in this vein.

The Government filed its initial Information against Simon
on May 19, 1994.   That Information charged Simon with
premeditated murder and third-degree burglary.   During a pretrial
conference on January 10, 1995, the Government stated its
intention to add a robbery charge.   Simon's counsel made no

---

[8]   Simon did file a response to Moss's *Anders* brief.   For
the most part, the additional issues Simon identifies in that
response are addressed in Hermon-Percell's *Anders* brief.   Simon
identifies two issues, however, that Hermon-Percell does not:
"[w]hether the territorial court erred in construing Petitioner's
letter solely as a request for relief from the conditions of
confinement and transfer to Wallens Ridge State Prison, a Motion
to Amend the Second Amended Petition for Habeas Corpus Relief and
denying such motion to amend" and whether the trial court's
purported "failure to appoint counsel to substitute atty. Wilds,
where the court stated that no statute existed under V.I. law for
the appointment of counsel during post-conviction proceedings,
thereby the court has no statutory basis to grant the request for
appointment of substitute counsel." (Appellant's App'x at 59-
61.)   We have duly considered these additional issues and find
them unmeritorious.

objection. At a subsequent status conference on January 13,
1995, the Government submitted to the defense its Amended
Information, which substituted the premeditated murder charge
with felony murder, added one count of first-degree robbery and
one count of conspiracy to commit robbery, and left unchanged the
third-degree burglary charge. At that status conference, the
Government also indicated that robbery would constitute the
predicate offense for the felony murder charge. Simon's counsel
objected. On January 18, 1995, the Government moved to amend the
Information. Simon's counsel opposed the motion. The trial
judge did not rule on the motion.

The trial proceeded as scheduled on January 23, 1995.
Before any testimony was taken, the Government orally moved to
amend the Information to omit the conspiracy charge. Simon's
counsel objected. The Superior Court granted the motion.[9] On
January 25, 1995, the Government submitted a Second Amended
Information, which charged Simon with felony murder, first-degree
robbery and third-degree burglary.

In his habeas petition, Simon argued that the Government's

---

[9] In its judgment dismissing Simon's habeas petition, the
Superior Court noted the confusion over which motion to amend --
the Government had moved both orally and in writing -- the trial
judge granted on January 23, 1995. The Superior Court assumed
that the trial judge must have granted both motions. The parties
do not dispute this on appeal, and we see no reason to question
the Superior Court's assumption.

amendment to the Information on the day of trial hampered his ability to prepare for trial. Specifically, he argued that the addition of a robbery charge prejudiced him. The Superior Court rejected that argument. The court agreed with Simon that the addition of a new charge constituted error under Federal Rule of Criminal Procedure 7(e). The court concluded, however, that such an error did not constitute a structural defect under *Arizona v. Fulminante*, 499 U.S. 279 (1991), and thus that a harmless error standard governed Simon's claim. The court determined that the harmless error inquiry asks whether an error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). In the Superior Court's view, the Government's Rule 7(e) violation was harmless beyond a reasonable doubt. The Superior Court noted that the Government had advised Simon's counsel as far as two weeks in advance of trial that it intended to add a robbery charge. The court also pointed to the "significant overlap" between the robbery charge and the charges in the original Information.

It is well-settled law that challenges to the sufficiency of a charging document are reviewable in habeas proceedings only to attack the convicting court's jurisdiction. *See Payne v. Jeffreys*, 846 N.E.2d 1248, 1249 (Ohio 2006); *Wyatt v. State*, 24 S.W.3d 319, 322-23 (Tenn. 2000); *Abney v. Warden, Mecklenburg*

*Correctional Center*, 332 S.E.2d 802, 804 (Va. Ct. App. 1985); *Ex parte Simpson*, 686 S.W.2d 384, 385 (Tex. Crim. App. 1985); *Weathers v. State*, 493 P.2d 270, 272 (Kan. 1972); *In re Williams*, 193 N.W.2d 793, 795-96 (S.D. 1972); *Application of Boley*, 350 P.2d 638, 639 (Nev. 1960).[10] The majority view is consonant with the Virgin Islands' habeas statute, which enumerates seven grounds warranting habeas relief, including "[w]hen the jurisdiction of [the convicting] court or officer has been exceeded." V.I. CODE ANN. tit. 5, § 1314(1).

Here, because Simon does not question the trial court's jurisdiction over his conviction, his attack on the Information is not properly before us. Indeed, Simon did in fact raise this issue on direct appeal. This Court addressed Simon's challenge, found it unmeritorious and affirmed his conviction. *Simon v. Government of the Virgin Islands*, No. 1995-67, slip op. (D.V.I. App. Aug. 20, 1997). Furthermore, Simon's challenge does not come within any of the other grounds for relief enumerated in the

---

[10] Federal courts likewise do not consider charging document challenges when a state convict brings a habeas suit in federal court, unless the convicting court's jurisdiction is questioned. *See Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1874 (2008); *Echavarria-Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir. 1994); *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989); *Cramer v. Fahner*, 683 F.2d 1376, 1382 (7th Cir. 1982).

Virgin Islands' habeas statute.[11]  We therefore conclude that

Simon's attack on the Superior Court's determination that the

harmless error standard applies, is frivolous.[12]

---

[11]  The Virgin Islands' habeas statute sets forth the
following seven grounds for relief:

> (1) When the jurisdiction of such court or officer has
> been exceeded.
> (2) When the imprisonment was at first lawful, yet by
> some act, omission, or event which has taken place
> afterwards, the party has become entitled to a
> discharge.
> (3) When the process is defective in some matter of
> substance required by law rendering such process void.
> (4) When the process, though proper in form, has been
> issued in a case not allowed by law.
> (5) When the person having custody of the prisoner is
> not the person allowed by law to detain him.
> (6) Where the process is not authorized by any order,
> judgment or decree of any court, nor by any provision
> of law.
> (7) Where a party has been committed on a criminal
> charge without reasonable or probable cause.

V.I. CODE ANN. tit. 5, § 1314.

[12]  While we have followed a different course from that taken
by the Superior Court, we nevertheless reach the same conclusion.
*Cf. In re Teleglobe Communications Corp.*, 493 F.3d 345, 385 (3d
Cir. 2007) (stating that an appellate court may affirm "on any
ground supported by the record").

We note that we are nevertheless troubled by the
Government's under-the-wire amendment to the Information and the
Superior Court's failure to rule promptly on the Government's
written motion to amend.  The Government charged Simon in May
1994 and did not apprise him of the new charges until January
1995.  It seems to us that the Government could have acted with
greater dispatch in putting the defense on notice of the new
charges.  While we conclude that no prejudice inured to Simon
under these particular circumstances, we remind the Government of
its constitutional obligation to provide criminal defendants with

##  2.    Elements of Aiding and Abetting

Simon assigns error to the Superior Court's recitation of the elements of aiding and abetting.  He contends that "the jury should have been given specific instructions since he was charged as an aider and abettor in order to alert the jury that the aider must in fact render aid or assistance[.]" (Appellant's Br. at 10) (quotation marks and citation omitted).

Under Virgin Islands law, criminal liability extends to any individual who "aids, abets, counsels, commands, induces or procures" the assault or attempted assault. V.I. CODE ANN. tit. 14, § 11(a).  "Liability as an aider and abettor requires proof that defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *United States v. Xavier*, 2 F.3d 1281, 1288 (3d Cir. 1993) (citations omitted).

Here, the trial judge instructed the jury as follows with respect to aiding and abetting liability:

> Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. . . . Whoever willfully causes an act to be done, which if directly performed by him or another person would be a crime or offense,

---

sufficient notice of the charges against them.  We are similarly confident that the Superior Court, going forward, will respond more expeditiously to situations such as the one presented here.

> is punishable as a principal. . . . Now, in order to
> aid and abet another to commit a crime, it is necessary
> that the accused . . . willfully associate himself in
> some way with a criminal venture, and willfully
> participate[] in it as he would in something he wishes
> to bring about, that is to say, that he willfully seek
> by some act or omission of his, to make the criminal
> venture a success.

(Appellant's App'x at 95.)

The trial judge's instruction to the jury parrots the language of the aiding and abetting provision in the Virgin Islands Code as well as the aiding and abetting elements endorsed by the *Xavier* Court. Simon's position that something more was required is legally unfounded and clearly frivolous.

### 3. Judicial Estoppel

Simon argues that the Superior Court erred by not holding that the Government was judicially estopped from eliciting certain testimony at trial. Simon's argument in this regard is difficult to grasp. He appears to latch onto what he perceives as an inconsistency between Roach's testimony that Simon shot Ezekiel and Roach's conviction for the same shooting in this Court.

"Judicial estoppel prevents a party from 'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)." *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 377 (3d Cir. 2007)

(quoting *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir.
1990)). The doctrine "has three threshold requirements: first,
the party in question must have adopted irreconcilably
inconsistent positions; second, the party must have adopted these
positions in 'bad faith'; and third, there must be a showing that
judicial estoppel is tailored to address the harm and that no
lesser sanction would be sufficient." *Chao v. Roy's Constr.,
Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008) (citation omitted).
Judicial estoppel "is an extreme remedy, to be used only when the
inconsistent positions are tantamount to a knowing
misrepresentation to or even fraud on the court." *Id.* (quotation
marks and citation omitted).

The Government was not judicially estopped from calling
Roach to testify that Simon killed Ezekiel. Simon was prosecuted
in the Superior Court by the Government of the Virgin Islands.
Roach was prosecuted in this Court by the United States
Government. There is no evidence that the Government of the
Virgin Islands was somehow involved in the latter proceeding. As
a consequence, it cannot be said that the Government adopted an
inconsistent position, either during these proceedings or in any
other proceeding.

To the extent Simon asserts that Roach himself should have
been judicially estopped from testifying that Simon shot Ezekiel

when Roach had already been convicted of Ezekiel's murder in a

separate trial, we are singularly unconvinced. We are unsure, as

a preliminary matter, that Roach, as a non-party in Simon's

trial, could even be judicially estopped. *Cf. Blake v. Race*, 487

F. Supp. 2d 187, 205 n.13 (E.D.N.Y. 2007) ("Defendants cite no

cases, and the Court is not aware of any cases, where the

doctrine of collateral estoppel has applied to the credibility of

non-party witness testimony."); *United States ex rel. Goodstein*

*v. McLaren Reg'l Med. Ctr.*, No. 97-72992, 2001 U.S. Dist. LEXIS

24440, at *7 (E.D. Mich. July 9, 2001) ("The Government has

failed to direct the Court's attention to, and the Court is not

aware of, any cases where a court has applied judicial estoppel

to statements of opinion made by a non-party witness, rather than

by the actual party.").

Even assuming judicial estoppel could reach Roach, Simon has

not pointed to any irreconcilably inconsistent statements on

Roach's part. Roach did not proclaim his own innocence at

Simon's trial. To the extent Simon finds Roach's admission at

Simon's trial that the two were involved in the burglary and

shooting difficult to square with Roach's claim of innocence at

Roach's own trial, we see no evidence of bad faith and Simon has

shown us none. This issue is therefore unmeritorious.

### 4.    The Government's Closing Remarks

Simon contends that the Government committed reversible error by improperly vouching for Roach during its closing argument.  During closing argument, the Government stated as follows:

> The criminal action of Carl Simon resulted in the death of Daniel Ezekiel, and on behalf of the Government of the Virgin Islands, we are asking you to hold Carl Simon accountable, *because James Roach is a credible witness.*  True, he did testify in the prior court proceeding.  He did give false testimony before, but he has told each and everyone [sic] of you the reasons why, because he was fearful.

(Appellant's App'x at 94) (emphasis supplied).

"Vouching is a type of prosecutorial misconduct." *Choi Chun Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002).  It "constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998).  While "[v]ouching is distinguishable from a personal opinion based on the evidence presented at the trial[,] . . . [a] prosecutor may not try to buttress his case by vouching for the credibility of a government witness." *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 283 (3d Cir. 1999) (citations omitted).  The Supreme Court has explained the dangers associated with vouching:

> The prosecutor's vouching for the credibility of

witnesses and expressing his personal opinion
concerning the guilt of the accused pose two dangers:
such comments can convey the impression that evidence
not presented to the jury, but known to the prosecutor,
supports the charges against the defendant and can thus
jeopardize the defendant's right to be tried solely on
the basis of the evidence presented to the jury; and
the prosecutor's opinion carries with it the imprimatur
of the Government and may induce the jury to trust the
Government's judgment rather than its own view of the
evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985) (citation

omitted).

"In order to find vouching, two criteria must be met: (1)

the prosecution must assure the jury that the testimony of a

Government witness is credible, and (2) this assurance must be

based on either the prosecutor's personal knowledge or other

information that is not before the jury." *Choi Chun Lam*, 304 F.3d

at 271 (citing *Walker*, 155 F.3d at 187). "On habeas review,

however, prosecutorial misconduct such as vouching does not rise

to the level of a federal due process violation unless it affects

fundamental fairness of the trial." *Id.* (citation omitted).

"Thus, habeas relief is not available simply because the

prosecutor's remarks were undesirable or even universally

condemned. The relevant question for a habeas court is whether

those remarks so infected the trial with unfairness as to make

the resulting conviction a denial of due process." *Id.* at 271-72

(quotation marks and citation omitted).

We think it debatable whether the Government's one-worded description of one of its witnesses as "credible" even amounts to vouching.[13] In any event, we have no doubt that such a brief utterance did not render Simon's trial fundamentally unfair. Indeed, "the Supreme Court has previously denied habeas relief where it found an ambiguous, isolated comment by a prosecutor insufficient to render an entire trial unfair." *Id.* at 272 (citing *Donnelly v. DeChristophoro*, 416 U.S. 637, 645 (1974)). The circumstance described in *Donnelly* is precisely the one presented here. Given this authority, we are convinced that Simon's appeal based on the Government's closing argument is frivolous.[14]

---

[13] This was not a case, for instance, where the prosecution told the jury that its witness had an incentive not to lie on the stand. *Cf. United States v. Combs*, 379 F.3d 564, 574-76 (9th Cir. 2004) (concluding that the prosecutor "plainly implied that she knew [an agent] would be fired for committing perjury and that she believed no reasonable agent in his shoes would take such a risk"); *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 284 (3d Cir. 1999) (finding impermissible vouching where the prosecutor's remark "was meant to convince the jury that the prosecutor knew that the witnesses were telling the truth"); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) (finding that the prosecution vouched for police witnesses by "that they would not lie on the stand and thereby jeopardize their careers and risk criminal prosecution"); *United States v. DiLoreto*, 888 F.2d 996, 998 (3d Cir. 1989) (finding that the prosecutor improperly vouched by stating: "We don't take liars. We don't put liars on the stand. We don't do that.").

[14] Simon's reliance on *United States v. Swinehart*, 617 F.2d 336 (3d Cir. 1980), is misplaced, as that case was decided on direct appeal and not in the habeas context. We will

5.    **Roach's Testimony**

Simon faults what he paints as the Government's use of

perjured testimony by Roach.    Specifically, he asserts that the

Government knowingly allowed Roach to testify that Roach was

---

nevertheless indulge Simon for a moment.    Even under the direct-
appeal standards governing the effect of prosecutorial
misconduct, Simon fares no better.

Ordinarily, a reviewing court employs "a harmless error
analysis when deciding whether a new trial is warranted because
of improper remarks made by the prosecutor during closing
arguments." *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir.
2003) (citing *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d
Cir. 1995) (en banc)).    "[V]ouching that is aimed at the witness's
credibility and is based on extra-record evidence is deemed
non-constitutional error." *United States v. Dispoz-O-Plastics,
Inc.*, 172 F.3d 275, 286 (3d Cir. 1999) (citing *Zehrbach*, 47 F.3d
at 1265).    "[N]on-constitutional error is harmless when 'it is
highly probable that the error did not contribute to the
judgment.'" *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002)
(quoting *Government of Virgin Islands v. Toto*, 529 F.2d 278, 284
(3d Cir. 1976)).    "'High probability' is found where the court
has a 'sure conviction that the error did not prejudice' the
defendant." *Id.* (quotation marks and citation omitted).    A three-
part test is used to determine whether improper comments are
prejudicial: "the scope of the comments within the context of the
entire trial, the effect of any curative instructions given, and
the strength of the evidence against the defendant." *Gambone*, 314
F.3d at 179-80 (citations omitted).    "Even if a prosecutor does
make an offending statement, the district court can neutralize
any prejudicial effect by carefully instructing the jury 'to
treat the arguments of counsel as devoid of evidentiary
content.'" *Id.* (quoting *United States v. Somers*, 496 F.2d 723,
738 (3d Cir. 1974)).

Here, it is hard to imagine a comment narrower than the
Government's fleeting description of Roach as "credible."    While
there is no evidence in the record that the trial judge gave a
curative instruction aimed specifically at that comment, given
the strong evidence of Simon's guilt, we have a sure conviction
that that comment did not prejudice Thomas.

receiving only "protection" in exchange for his testimony when
the Government knew that Roach had been promised a reduction in
his sentence in exchange for his testimony. The *Anders* brief
cleaves the issue of Roach's testimony into two sub-issues:
whether Simon was prejudiced by the government's use of that
testimony and whether Simon was prejudiced by the government's
failure to turn over evidence of an agreement between the
Government and Roach. Because these questions are practically
identical, we weld them back together.

"The Supreme Court has long held that the state's knowing
use of perjured testimony to obtain a conviction violates the
Fourteenth Amendment." *Lambert v. Blackwell*, 387 F.3d 210, 242
(3d Cir. 2004) (citations omitted). That holding is rooted in
the notion that it is fundamentally unfair to the defendant when
"the prosecution's case includes perjured testimony and . . . the
prosecution knew, or should have known, of the perjury." *United
States v. Agurs*, 427 U.S. 97, 103 (1976). "The same is true when
the government, although not soliciting false evidence, allows it
to go uncorrected when it appears at trial." *United States v.
Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992) (citing *Giglio v.
United States*, 405 U.S. 150, 153 (1972)). A conviction arising
out of such circumstances must be vacated "if there is any
reasonable likelihood that the false testimony could have

affected the judgment of the jury." *Id.*  The Supreme Court has

explained: "Although this rule is stated in terms that treat the

knowing use of perjured testimony as error subject to harmless

error review, it may as easily be stated as a materiality

standard under which the fact that testimony is perjured is

considered material unless failure to disclose it would be

harmless beyond a reasonable doubt." *United States v. Bagley*, 473

U.S. 667, 679-80 (1985).  Thus, "in order to make out a

constitutional violation [a defendant] must show that (1) [a

witness] committed perjury; (2) the government knew or should

have known of [the] perjury; (3) the testimony went uncorrected;

and (4) there is any reasonable likelihood that the false

testimony could have affected the verdict." *Lambert*, 387 F.3d at

242.

Here, on cross-examination, Roach was asked by defense

counsel whether he had lied to the jury during his own trial in

this Court.  Roach answered in the affirmative.  When asked to

explain his answer, the following exchange took place:

> [Roach]                    What happen in the District Court,
>                            I said that because I wasn't
>                            getting no protection.  I getting
>                            the protection now, and I willing
>                            to say how everything happened.
>                            What I saying is how it happened.
>
> [Defense Counsel]          When did you get the protection Mr.
>                            Roach?

| [Roach] | After.  After the -- I have get convict.  I said I went to the Government, and I tell them I need protection, and I willing to say what happen. |
|---|---|
| [Defense Counsel] | And what in terms of protection did they do for you? |
| [The Court] | Well, you don't have to answer that question.  He said he got protection.  We don't need to know the details of that protection. |

(Appellant's App'x at 83-84.)

The Superior Court found that this testimony did not constitute perjury, noting that Simon had failed "to present a single affidavit, letter, or document to support his contention that either the United States Attorneys' Office or the Virgin Islands' Attorney General's Office offered Roach a reduction in sentence in exchange for his testimony." *Simon*, 47 V.I. at 27. Accordingly, the Superior Court denied Simon's request for an evidentiary hearing.  The court also concluded -- even assuming that the Government had failed to disclose the use of perjured testimony -- that Roach's testimony would not have affected the outcome of Simon's trial.  The court took stock, for example, of other witness testimony circumstantially placing Simon at the scene of the crime.[15]  In the Superior Court's view, "even if the

---

[15]  For instance, law enforcement officials testified that Simon was on St. John on the night of the crime and exhibited suspicious behavior.  Connor, one of the victims, testified that

government or Roach had admitted to the existence of an alleged agreement, the corroborating testimony of other witnesses would have engendered confidence in the jury's verdict." *Id.* at 28.

Like the Superior Court, we reject Simon's perjury claim on the ground that it is wholly unsubstantiated by any evidence. First, Simon's contention that the Government allowed Roach to perjure himself is not borne out by the testimony at trial. "A witness commits perjury if he or she 'gives false testimony concerning a material matter *with the willful intent to provide false testimony*, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (emphasis supplied) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)), *cert. denied*, 129 S. Ct. 652 (2008). Roach's testimony about the "protection" he professed to have received from the United States Government is simply not at variance with any deal he may have struck for a reduction of his sentence. On cross-examination, Roach was never asked whether such a deal was in the works or had been consummated. And Roach, as far as we can tell from the record before us, never suggested as much. Thus, we are left with no proof that the purported lie

---

Roach was accompanied by a masked individual who appeared shorter than Roach. The government demonstrated at trial that Simon is shorter than Roach.

of which Simon complains was ever even uttered.[16]  As such, the

first prong of the *Lambert* test is unmet.

Second, even if Roach's testimony were perjurious, Simon has

not offered us any basis on which to conclude that the Government

knew or should have known about any deal that Roach may have

reached with the United States Government.  The Government of the

Virgin Islands and the United States Government are, for the

purpose of this discussion, separate sovereigns.[17]  While there

may be -- and frequently is -- cooperation between them in a host

---

[16]  To the extent Simon targets Roach's lies in a proceeding
other than Simon's trial, he misses the mark.  Roach conceded at
Simon's trial that he had lied elsewhere; his credibility, or
lack thereof, was therefore placed squarely before the jury.  In
any event, Roach's mendacity in some other setting is not
relevant to Simon's perjury theory. *See Hoffecker*, 530 F.3d at
183 ("It must be remembered that we are concerned here with
whether Swarn's testimony was false in this case, not whether he
had been forthright in other situations.").

[17]  The Virgin Islands, as an unincorporated territory, is
not a sovereign in the technical sense, as it derives its power
from the United States. *Parrott v. Government of the Virgin
Islands*, 230 F.3d 615, 621 (3d Cir. 2000).  However, "the history
of the relationship between the United States and the Virgin
Islands indicates that Congress desired the territory to have
jurisdictional powers analogous to those of a state." *Water Isle
Hotel & Beach Club, Ltd. v. Kon Tiki St. Thomas, Inc.*, 795 F.2d
325, 328 (3d Cir. 1986).  And indeed, territorial acts cannot be
imputed to the United States. *See, e.g., Government of Virgin
Islands v. Bryan*, 818 F.2d 1069, 1072 (3d Cir. 1987) (reasoning
that the "suggestion that an Act passed by the Legislature of the
Virgin Islands is an Act of Congress is contrary to [Third
Circuit] precedent"); *Harris v. Boreham*, 233 F.2d 110, 113 (3d
Cir. 1956) ("The local laws enacted under the legislative power
granted by Congress are accordingly territorial laws, not laws of
the United States." (citations and footnote omitted)).

of domains, including in criminal prosecutions, that relationship

in no way suggests that knowledge in the hands of one is

automatically imputed to the other. In the absence of something

more concrete than Simon's scattershot finger-pointing -- which,

as far as we can tell, is based on pure supposition -- we will

not presume any untoward conduct by the Government, and certainly

not that it sought to obtain Simon's conviction based on Roach's

alleged lies. *See, e.g., Virgin Islands v. Suarez*, 242 Fed. Appx.

845, 851 (3d Cir. 2007) (unpublished) (rejecting a perjury theory

where the appellant's proof did not show that "the government

knowingly made use of false testimony to obtain [the appellant's]

conviction"). As a consequence, the second element of the

*Lambert* test is likewise lacking.

Because the record is completely bereft of evidence

supporting Simon's perjury claim, we conclude that it is not a

meritorious issue for appeal. *See Lambert*, 387 F.3d at 245

(rejecting a habeas petitioner's perjury theory because "[t]here

is simply no foundation in the record for this allegation").

### 6. Sufficiency of the Evidence

Simon maintains that the Government did not meet its burden

of proving that he committed first-degree robbery.

Virgin Islands law defines robbery as "the unlawful taking

of personal property in the possession of another, from his

person or immediate presence and against his will, by means of

force or fear." V.I. CODE. ANN. tit. 14, § 1861; *Government of*

*Virgin Islands v. Carmona*, 422 F.2d 95, 98 (3d Cir. 1970). A

person commits first-degree robbery

> when, in the course of the commission of the crime or
> of immediate flight therefrom, he or another
> perpetrator of the crime:
>
> (1) Causes physical injury which is incapacitating in
> any way to any person who is not a perpetrator of the
> crime; or
>
> (2) Displays, uses or threatens the use of a dangerous
> weapon.

*Id.* § 1862.

Simon mounts a twofold attack on his first-degree robbery

conviction. First, in an argument that bears little relationship

to evidentiary sufficiency, Simon claims that the first-degree

robbery charge in the Information was not "narrowly drawn." We

need not be deterred long in rejecting this argument. As we

noted earlier, challenges to the sufficiency of a charging

document are considered in habeas proceedings only if they attack

the convicting court's jurisdiction. Here, Simon does not

question the trial court's jurisdiction over his first-degree

robbery conviction. His attack on the Information is not to be

considered under these circumstances.[18]

_____

[18] Simon's challenge in this regard, even were we to
consider it, would fail. He relies on *Government of Virgin*

Second, Simon posits that there was no evidence that he took

property from the victim's "immediate presence."  The Superior

Court rejected that position.  Recognizing that the phrase

"immediate presence" is not defined in the Virgin Islands Code,

---

*Islands v. Jarvis*, 653 F.2d 762 (3d Cir. 1981).  In that case,
the defendant was charged with and convicted of "forcibly,
unlawfully, and by means of fear by displaying and threatening
the use of handguns, take(n) money possessed by Carlos A.
Encarnacion from his person and against his will . . . ." *Id.* at
765.  On appeal, the defendant argued that there was insufficient
evidence to support his robbery conviction.  The Third Circuit
agreed and vacated that conviction, reasoning that the record
contained no evidence that "money was taken directly from
Encarnacion's person," *id.*, as the information alleged.  Rather,
the evidence reflected that the money that "was taken was in
Encarnacion's wallet which was found in Encarnacion's stolen
car." *Id.*  Thus, according to the Third Circuit, the charge in
the information did not conform to the evidence adduced at trial.
The court noted in dicta that if that charge "had been drawn in
the terms of [the Virgin Islands robbery statute], [the
defendant's] argument would be far less compelling." *Id.* at 764
(footnote omitted).

Here, the first-degree robbery charge in the Information
against Simon alleged as follows:

> On or about September 7, 1993, in St. John, U.S. Virgin
> Islands, Carl Simon . . . did aid, abet, counsel or
> induce another, to wit[:] James Roach, to commit
> robbery by unlawfully taking personal property in the
> possession of Elroy Connor to wit[:] a bag of currency
> from his person or immediate presence and against his
> will, by means of force or fear, and did display, use
> or threaten to use a dangerous weapon, to wit[:] a
> firearm, during the commission of robbery . . . .

(Appellant's Br. at 21.)  Unlike the information in *Jarvis*, the
robbery charge against Simon clearly tracks the relevant
statutory language and conforms to the evidence adduced at trial.
Simon's reliance on *Jarvis* is therefore unavailing.

the court nevertheless concluded that the facts presented at trial established that Simon had taken property from Connor's immediate presence. At trial, there was testimony that Connor, on arriving home, placed two bags of money on his porch before entering the house and encountering Simon and Roach. After the ensuing melee Connor fled the house, grabbing one of the bags of money on his way. Based on this testimony, the Superior Court determined that "[t]o suggest that the remaining bag of money was not taken from Connor's presence -- immediate or otherwise -- because Connor fled the scene in fear for his life . . . strains common sense." *Simon*, 47 V.I. at 30 (internal citation omitted).

The Superior Court was correct in noting that Virgin Islands law does not define "immediate presence." We have previously interpreted that phrase "to encompass circumstances in which the defendant and the victim are not within close proximity to one another at the time the property is taken." *Smith v. Gov't of the V.I.*, Crim. No. 2004-90, 2008 U.S. Dist. LEXIS 57337, at *9 (D.V.I. App. Div. July 23, 2008) (citations omitted). In *Smith*, we held that the Virgin Islands robbery statute should be read "liberally to allow for situations where the victim has for some reason been physically separated from the robber." *Id.* at *10 (footnote and citation omitted).

We see no reason to diverge from our interpretation in

*Smith*. Indeed, under a different interpretation, a perpetrator could avoid a robbery charge by creating conditions to cause a victim to part with her property out of fear. We do not believe that the Virgin Islands robbery statute contemplates such a perverse scenario. We therefore agree with the Superior Court that Connor's flight from the house after the burglary and the murder does not preclude a finding beyond a reasonable doubt that Simon took property from Connor in Connor's immediate presence. *See, e.g., Smith*, 2008 U.S. Dist. LEXIS 57337, at *14 ("Given the liberal interpretation of 'immediate presence' in the Virgin islands, there is sufficient evidence to sustain a first degree robbery conviction.").

Accordingly, we find that Simon's sufficiency-of-the-evidence attack is frivolous.

## IV.  CONCLUSION

For the reasons discussed above, we will affirm the Superior Court's July 18, 2002, judgment and grant Hermon-Percell's motion to withdraw. An appropriate order follows.